IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2016 Session

## IN RE: MADDOX P.

**Appeal from the Juvenile Court for Sumner County**
**No. 2011-JV-711      Barry R. Brown, Judge**

_____

**No. M2016-00569-COA-R3-JV – Filed January 17, 2017**

_____

This appeal arises from a dispute over a residential parenting schedule. Joshua Parker ("Father") filed a petition against Anna Marsh ("Mother") in the Juvenile Court for Sumner County ("the Juvenile Court") seeking to modify the parenting plan regarding their minor child, Maddox ("the Child"). Mother filed a counter-petition. After a hearing, the Juvenile Court made certain modifications to the existing parenting plan but otherwise left it in place. Mother appeals to this Court, arguing in part that the Juvenile Court should have established specific days each month that Father may exercise visitation with the Child. Father, an airline pilot, has a shifting work schedule. We hold that Mother's requested schedule would have the practical effect of unduly limiting the Child's time with Father and that the Juvenile Court did not abuse its discretion in denying Mother's requested modification. We affirm the judgment of the Juvenile Court in its entirety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Jon S. Jablonski, Brentwood, Tennessee, for the appellant, Anna Marsh.

Kirk D. Catron and Aaron J. Conklin, Murfreesboro, Tennessee, for the appellee, Joshua Parker.

# OPINION

## Background

In September 2012, the Juvenile Court entered an agreed order establishing a permanent parenting plan regarding the Child, who was born in January 2009. The parenting plan granted Mother 245 days of residential parenting time to Father's 120 days. Father, an airline pilot with an unfixed work schedule, was granted a "minimum" of ten days each month. The parties were to operate in good faith toward coordinating Father's residential parenting time around Father's work schedule. The parenting plan had various other provisions concerning holidays and transportation. Child support was set at $742.00 per month from Father to Mother.

In April 2014, Father filed a petition to modify the parenting plan. Father alleged that Mother had refused him additional days of visitation, that the Thanksgiving holiday wrongly was balanced in favor of Mother, and that Mother refused to permit his parents to pick up the Child. In July 2014, Mother filed a counter-petition. Mother alleged that Father was in willful contempt of the parenting plan for, among other things, failing to disclose fully his work schedule and for failing to coordinate the Halloween holiday. The case was heard initially by a Magistrate in December 2014. The Magistrate entered an order finding Father in contempt and modifying the parenting plan. Father appealed to the Juvenile Court. A de novo hearing was conducted before the Juvenile Court in July 2015. The testimony at trial revealed an acrimonious relationship between Mother and Father. Mother testified to difficulty in communicating with Father, sometimes requiring 20 to 30 emails to arrange a schedule. Mother testified to 70 occasions on which Father was late in picking up the Child or canceled altogether. Mother sought a more consistent visitation schedule rather than ten days throughout any given month. Mother testified:

> Q. What would be so wrong -- if Josh has 13 days off, what would be so wrong with giving him 12 days? Why is that the problem to you?
> A. I feel like consistency is very important. And there's no structure. There's no -- there's no -- on the days that he sends sometimes he may have -- there's just never any consistency. I just try to look at the schedule and think in terms of our son, what is the best way to do it for him.
> Q. But my point is you have a person who flies an airplane for a living and flew an airplane for a living when you were living with him. Correct?
> A. I'm aware. Yes.
> Q. Okay. So this is a schedule -- I mean, this child has lived under this kind of a schedule since birth. Correct?
> A. Yes.

Q. And you've not presented any proof, that I've heard, that this has done any harm to this child.

A. I think my part that I have a difficult time understanding is -- is if it's truly about our son, if you need to be off for a wedding, if you need to be off for a vacation, if you need to be off because you want to be off, if you need to be off because it's your thirty-second birthday and you want to go out with friends, it's never a problem he's off. If our son graduates kindergarten, if our son has soccer games, it's I have to work. It depends.

And I'm not saying he's never been to any of it. But I question the prioritizing of what's important and what's not important.

For his part, Father testified that in his profession as a pilot, there is a bidding process by which one obtains his or her work schedule. The schedules are bid upon according to seniority. Father could try to bid for certain days to accommodate a precise schedule for visitation, or trade for it, but he could not guarantee he would get that schedule. Father was in the process of changing his employment from Compass to Delta Airlines. This change in airlines would put Father at the bottom of the seniority list, but, according to Father, he would have higher pay in the long run. Father testified:

Q. Did I also hear you testify that Mom never provides you extra parenting time when requested? Did I hear that correctly? Did you tell Judge Brown that?

A. She will occasionally. I guess I misspoke when we were talking about the actual awarded schedule. Last minute, occasionally, Anna will give me a few hours here or something like that.

Q. You've seen this (indicating)?

A. I have seen that.

Q. How many times are in here about extra time? Have you ever counted the number?

A. I think it's very misleading.

Q. Oh, it's not truthful? Is that what you're telling me?

A. There have been times that Anna has given me a half a day here or some -- like, I got to take Maddox to dinner, to Chuck E. Cheese a time or two. There have been times that she's given me above ten days. You're correct.

Q. How many times? Do you know?

A. I'm not sure.

Q. How about 34 times? Does that surprise you?

A. Absolutely.

Q. What about the 11 times she asked you to extracurricular events that you didn't come to? Is that true?

A. If I missed anything from Maddox, including pick-ups or anything, it's been because of work.

Q. Is that just a good blanket for it all? Work, work, work?

A. Well, I do put Maddox as my priority.

Q. That's why 70 times you were late or cancelled and didn't get him at all, because you put him as your priority?

A. If I can't make a flight home from work, then I can't make pick up. Unfortunately, that is out of my control.

The Juvenile Court held as follows in a December 2015 order:

This cause came to be heard on the 16th day of July, 2015, before the Honorable Barry Brown, Judge of the Juvenile Court for Sumner County, Tennessee, at Gallatin, upon the de novo hearing of the Petition to Modify Parenting Plan filed by the Respondent, JOSHUA PARKER, on April 15, 2014 and Counter-Petition filed on July 21, 2014 by the Petitioner, ANNA MARSH, and the Court finds, after hearing testimony of the parties, the witness Anthony Persuitti, statements of counsel, evidence submitted at trial and a review of the entire record, as follows:

1. The Father shall be responsible for one-half (1/2) of the minor child's, MADDOX WESLEY PARKER, school tuition, whichever school that might be, starting the school year 2015-2016. This cost shall not factor into child support as Father agreed to this voluntarily.

2. The Father is to give his list of days off he is available for parenting the following month to the Mother within twenty-four (24) hours of receiving such list. The Mother has thirty-six (36) hours from receipt of such list of days off from the Father to inform him which ten (10) days he shall have that month. If the Mother fails to respond within thirty-six (36) hours the Father will send the Mother his list of ten (10) days. If the Father has to miss or cancel any of those ten (10) days, those days shall be forfeited by him.

3. The Father's parents may pick up the minor child, MADDOX WESLEY PARKER, upon notice to the Mother. The paternal grandparents live in Kentucky and may not, after picking up such child, take him to Kentucky.

4. The Father is in Contempt of Court with regard to the 2013 Halloween incident testified to by the parties. Father is ordered to pay towards Mr. Longmire's attorney's fee the sum of six hundred ($600) dollars.

5. The parties are to split Thanksgiving as follows:

a. Wednesday at 6:00 p.m.-Friday at 6:00 p.m. with Father on even years.

b. Friday at 6:00 p.m.-Sunday at 6:00 p.m. with Mother on odd years.

c. This holiday parenting time shall occur regardless of whose scheduled weekend this is.

6. Father is entitled to a seven (7) day and a six (6) day vacation each year. Father must inform Mother within forty-five (45) days of which days he is taking for vacation prior to exercising such visitation by written notice. This vacation time is not in addition to the ten (10) days the Father receives each month. The seven (7) day and six (6) day vacations can not be consecutive or in the same month.

7. Each party shall pay their own attorney's fees other than that set out in Section 4 of this Order and shall split any unpaid court costs one-half (1/2) each.

8. Other holidays shall be the same as set out in the 2012 Permanent Parenting Plan, including the Christmas vacation. Holidays are in addition to the Father's ten (10) days he receives each month.

9. A new child support worksheet and child support obligation shall be prepared to coincide with the Court's Order. The parties shall exchange their income and cost of health insurance, through their respective counsel, as of June 30, 2015.

10. In all other respects the September 25, 2012 Permanent Parenting Plan remains the same.

Mother filed a motion to alter or amend the judgment. In February 2016, the Juvenile Court entered another order as follows:

**THIS CAUSE** came to be heard the 1st day of February, 2016, before the Honorable Barry Brown, Judge of the Juvenile Court for Sumner County, Tennessee upon motion of the Respondent/Counter-Petitioner, **ANNA MARSH**, to Alter and/or Amend the Court's final judgment entered herein on December 7, 2015. The Court, hearing argument of counsel, grants same.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that Paragraph 2 of said Order shall be modified and altered to require the Petitioner/Counter-Respondent/Father, **JOSHUA PARKER**, to provide his actual work schedule to the Respondent/Counter-Petitioner/Mother, **ANNA MARSH**, when scheduling parenting time as opposed to providing a "list of days off";

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Paragraph 3 of said Order shall be clarified to the extent that the paternal grandparents are not allowed to exercise the Petitioner/Counter-Respondent/Father's parenting time as set forth herein but may pick up the parties minor child during the Petitioner/Counter-Respondent/Father's scheduled parenting time provided the Father will be no later than five (5) hours from beginning of same and being physically present with the parties minor child for same;

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Paragraph 4 of said Order is amended to specifically award the Respondent/Counter-Petitioner/Mother, **ANNA MARSH**, a judgment in the amount of Six Hundred Dollars and no cents ($600.00) for her attorney's fees for which execution may issue if necessary;

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the parties shall apply any child support modification which is the result of a new child support worksheet to be filed should a significant variance exist herein with the effective date of retroactivity of same being July 1, 2015.

Subsequently, Mother filed a motion to set child support and to enter a final order. In April 2016, the Juvenile Court entered its final order in this matter, stating:

This cause came on for final hearing on this the 5th day of April 2016, before the Honorable Barry Brown, Judge of the Juvenile Court for Sumner County, Tennessee, upon Motion of the Respondent/Counter-Petitioner, Anna Marsh, to set child support and enter a Final Order in this action.

Based upon the documentation attached to the Motion; the stipulation of Counsel that the cost to provide health insurance for the minor child is $106.74 per month; the 2015 Forms W-2, which were tendered to the Court as an offer of proof by Joshua Parker, and marked as Collective Exhibit 1; argument of Counsel; and the entire record herein, the court finds as follows:

1) The cost to provide health insurance for the minor child, which insurance is provided by Father, is $106.74 per month as stipulated by the parties;

2) The number of days that the child is with each parent according to the Orders of December 7, 2015, and February 17, 2016, is one-hundred thirty (130) days with the Father and two hundred thirty-five (235) days with the Mother;

3) The average monthly cost incurred by Mother to provide work related child care for the child is $157.83 per month;

4) That, notwithstanding the prior Order of December 7, 2015, which required, "The parties shall exchange their income and cost of health insurance, through their respective counsel, as of June 30, 2015", the parties' entire 2015 income as reflected on their respective Forms W-2 should be used as their income for the child support worksheet; to wit, $65,000.00 for Mother ($5,416.67 per month) and $93,246.07 for Father ($7,770.51 per month);

5) Counsel should prepare a child support worksheet based upon these figures and said worksheet is attached to this Order, which reflects that the monthly child support obligation is Six Hundred Thirteen Dollars ($613.00) per month from Father to Mother, which amount is a significant variance from the present support obligation of Seven Hundred Forty-two Dollars ($742.00) per month as is presently Ordered;

6) The new child support in the amount of Six Hundred Thirteen Dollars ($613.00) per month from Father to Mother, shall be retroactive to the payment that was due on July 1, 2015;

7) As a result of the new support amount, which has been made retroactive to July 1, 2015, the Father has overpaid his child support obligation by One Hundred Twenty-nine Dollars ($129.00) per month for 9 months (July 2015 through March 2016) in the total amount of $1,161.00; and

8) The amount of $1,161.00 shall be paid to Father by Mother as follows: $75 per month.

9) This Order shall be a Final Order resolving all outstanding issued between the parties. Accordingly, it is so **ORDERED, ADJUDGED**, and **DECREED**.

Mother timely filed an appeal to this Court.

## Discussion

Although not stated exactly as such, Mother raises the following two issues on appeal: 1) whether the Juvenile Court abused its discretion in the modification of the parties' parenting plan by failing to take into account the best interests of the Child and by failing to provide consistency in the Child's life, and 2) whether the Juvenile Court abused its discretion in declining to award attorney fees to Mother at trial other than the $600.00 award for the contempt portion of the hearing. Father attempts in his brief's conclusion to raise his own issue of whether this appeal should be held frivolous and whether he should be awarded his attorney's fees.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Both parties agree that the Juvenile Court's three orders quoted above lack sufficient findings of facts or conclusions of law. Regarding how this Court may proceed when confronted with limited findings of fact and conclusions of law, we have stated:

> We note . . . that Rule 52.01 of the Tennessee Rules of Civil Procedure requires the trial court to state expressly its findings of fact and conclusions of law, even where the parties do not request it. Tenn. R. Civ. P. 52.01. If the trial court fails to do so, its decision is normally vacated and the cause remanded for such findings and conclusions; however, the appellate court may, in some circumstances, "soldier on" in the absence of them. *See Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *26 (Tenn. Ct. App. July 13, 2012).

*In re: S.J.*, 387 S.W.3d 576, 594 n. 9 (Tenn. Ct. App. 2012).

In our view, the record on appeal, containing among other things transcripts of the hearings, is developed sufficiently such that we may proceed with appellate review. We admonish trial courts, however, to comply with Rule 52.01 of the Tennessee Rules of Civil Procedure as our "soldiering on" despite deficient orders is not always possible.

We first address whether the Juvenile Court abused its discretion in the modification of the parties' parenting plan by allegedly failing to take into account the best interests of the Child by failing to provide consistency in the Child's life. This Court has stated:

> [W]hen a court is considering a petition to modify a residential parenting schedule, it must first determine whether a material change of circumstance has occurred. Tenn. Code Ann. § 36-6-101(a)(1)(C). If such a change is established, the court proceeds to determine whether modification of the schedule is in the best interest of the child, utilizing the factors at § 36-6-106(a) and, where applicable, § 36-6-406.

*Wheeler v. Wheeler*, No. M2015-00377-COA-R3-CV, 2016 WL 3095695, at *3 (Tenn. Ct. App. May 24, 2016), *no appl. perm. appeal filed*. The standard for reviewing a trial court's modification to a residential parenting schedule is that of abuse of discretion. *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013). An abuse of discretion occurs when a trial court "appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id*. (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)).

Mother argues that the Juvenile Court should have approved Mother's proposed parenting plan which would establish a specific one-week schedule for Father to visit the Child each month. According to Mother, the Child needs consistency above all. Mother points to evidence in the record reflecting that Father has not always adhered to the 2012 parenting plan. Indeed, Father was held in contempt for one violation of the parenting plan.

It is evident that the Juvenile Court found a material change in circumstances sufficient to modify, if only slightly, the parenting plan and residential schedule. The evidence does not preponderate against this finding. However, it is not at all clear from the evidence or Mother's argument that the cause of Father's past non-compliance is the non-fixed nature of the parenting residential schedule, or that the proper remedy would be to set a fixed one-week schedule. Father is an airline pilot who must bid for his work schedule and is not currently in a position to guarantee specific days for his availability to visit the Child. The almost certain effect of adopting Mother's proposed parenting plan would be to curtail the Child's time with Father. Tenn. Code Ann. § 36-6-106 (a) (2014) instructs courts to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors." This is not an ironclad rule, and may be superseded by other relevant factors, but, barring evidence to the contrary, our starting point is to proceed with an eye toward maximizing parenting time for each parent. Mother's proposed parenting plan would almost surely limit the Child's visitation time with Father. At various points in her argument, Mother asserts that Father places his career ambitions above the best interest of the Child. We believe, however, that the Child's best interest is not served by forcing Father to choose between his career and a fixed visitation schedule. Father's continued professional success as a pilot has and should continue to inure to the Child's best interest. This of course in no way means that Father can cite his career to disregard the parenting plan. It means merely that a flexible visitation schedule serves to maximize the Child's time with Father, while acknowledging the reality of Father's profession. We find such a balance to be in the Child's best interest, as did implicitly the Juvenile Court.

While the Juvenile Court's orders in this case are not a model of clarity, it appears that the Juvenile Court rejected Mother's contention that a fixed schedule would serve the Child's best interest. The Juvenile Court instead made certain minor tweaks to the existing 2012 parenting plan and required the parties to coordinate in advance on Father's availability. We find no abuse of discretion in the Juvenile Court's decision to keep the 2012 parenting plan in effect as modified by the Juvenile Court.

We next address whether the Juvenile Court abused its discretion in declining to award attorney fees to Mother at trial other than the $600.00 award for the contempt portion of the hearing. Tenn. Code Ann. § 36-5-103(c) (2014) provides:

> (c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Our standard of review on this issue is abuse of discretion. Father received some requested relief with respect to Thanksgiving alternation and his parents' ability to pick up the Child, but he did not get additional days per month beyond the minimum of ten. Mother, on the other hand, lost on her primary issue raised below and on appeal, that of requesting a set monthly schedule for Father's visitation. Therefore, apart from the finding against Father for contempt which was not appealed, Mother could hardly be said to have prevailed either below or on appeal. We find no abuse of discretion in the Juvenile Court's declining to award Mother any additional attorney's fees incurred in these proceedings pursuant to Tenn. Code Ann. § 36-5-103(c).

As a final matter, Father attempted to raise in the conclusion of his brief the issue of whether this appeal should be held frivolous, or whether, as an alternative, he should be awarded attorney's fees pursuant to Tenn. Code Ann. § 36-5-103(c). We do not address issues raised in passing in the conclusion of a brief. "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). We see no reason to make an exception here.

## **Conclusion**

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Anna Marsh, and her surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE